UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
BRICKLAYERS INSURANCE AND WELFARE FUND,
BRICKLAYERS PENSION FUND, BRICKLAYERS
SUPPLEMENTAL ANNUITY FUND, BRICKLAYERS
AND TROWEL TRADES INTERNATIONAL PENSION
FUND, NEW YORK CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND,
INTERNATIONAL MASONRY INSTITUTE, and
JEREMIAH SULLIVAN, JR., in his fiduciary capacity as
Administrator, BRICKLAYERS LOCAL 1,
INTERNATIONAL UNION OF BRICKLAYERS AND
ALLIED CRAFT WORKERS, and BRICKLAYERS
LABOR MANAGEMENT RELATIONS COMMITTEE,

     Plaintiffs,       **ORDER**

   - against -         13 CV 5204 (CLP)

SPERANZA BRICKWORK, INC., LIBERTY MUTUAL
INSURANCE COMPANY, and JOSEPH SPERANZA,

     Defendants.
-------------------------------------------------------------------------X

   On September 18, 2013, plaintiffs, Bricklayers Insurance and Welfare Fund, Bricklayers

Pension Fund, Bricklayers Supplemental Annuity Fund, Bricklayers and Trowel Trades

International Pension Fund, New York City and Long Island Joint Apprenticeship and Training

Fund, and the International Masonry Institute (the "Funds"), and Jeremiah Sullivan, Jr., in his

fiduciary capacity as Administrator, Bricklayers Local 1, International Union of Bricklayers and

Allied Craft Workers ("Local 1" or the "Union"), and the Bricklayers Labor Management

Relations Committee ("BLMRC") (collectively, "plaintiffs"), brought this action against

defendants Liberty Mutual Insurance Company ("Liberty"), Speranza Brickwork, Inc., and

1

Joseph Speranza (collectively, "Speranza"), seeking to recover unpaid employee benefit fund contributions and unremitted dues, pursuant to Sections 515, 404, and 409 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1145, 1104, and 1109 ("ERISA"). Plaintiff seeks to recover against Liberty based on a payment bond issued by Liberty on one of Speranza's projects pursuant to New York state law.

On December 13, 2013, the parties consented to jurisdiction before the undersigned to conduct all further proceedings in this matter. By Notice of Motion dated August 15, 2014, defendant Liberty moves for summary judgment, seeking a judgment of dismissal on plaintiffs' claim against Liberty based on the payment bond.

For the reasons stated below, this Court denies Liberty's motion for summary judgment.


FACTUAL BACKGROUND

The Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and Jeremiah Sullivan is the Chairman of the Trustees and Administrator of the Local 1 Funds. (Compl.[1] ¶¶ 3-4). Defendant Joseph Speranza is the owner and president of Speranza, an employer maintaining offices and conducting business in New York. (Id. ¶¶ 7, 9). Defendant Speranza is a member of the Building Contractors Association ("BCA") and, as such, is bound by the Local 1 collective bargaining agreement ("CBA"). (Id. ¶¶ 10-12). The CBA requires Speranza, as a member employer, to pay contributions toward pension benefits, medical benefits, dues, and training. (Id.)

---

[1]Citations to "Compl." refer to plaintiffs' Complaint, filed on September 18, 2013.

2

On or about August 6, 2010, Speranza was hired as a subcontractor to Hunter Roberts Construction Group LLC ("Hunter Roberts") to perform certain masonry and brickwork on the Public School 29 Project ("PS 29 Project"). (Def.'s 56.1 Stmnt[2] ¶¶ 2, 3; Pls.' 56.1 Cntr Stmnt[3] ¶ 3). The New York School Construction Authority ("SCA") required Hunter Roberts to purchase a labor and materials bond for the PS 29 Project (the "Bond"), which Hunter Roberts purchased from Liberty, a Massachusetts corporation licensed to transact business as a surety in New York. (Def.'s 56.1 Stmnt ¶¶ 3, 4; Pls.' 56.1 Cntr Stmnt ¶¶ 3, 4; Compl. ¶¶ 8, 34). Relevant here is the provision in the Bond requiring that suits brought pursuant to its provisions must be commenced within two years of the date the principal ceased work on the project. (See Def.'s Mem.,[4] Ex. D.2.)

Under the CBA, the Speranza defendants were required to make wage deductions for each bricklayer working on the PS 29 Project. (Def.'s 56.1 Stmnt ¶ 5, Ex. B at 1, Ex. C at 1; see Pls.' 56.1 Stmnt[5] ¶¶ 1-4). The CBA requires all signatories to submit to periodic audits. (Pls.'

---

[2]Citations to "Def.'s 56.1 Stmnt" refer to the Statement of Undisputed Material Facts in Support of Liberty Mutual Insurance Company's Motion for Summary Judgment, dated August 15, 2014.

[3]Citations to "Pls.' 56.1 Cntr Stmnt" refer to Plaintiffs' Rule 56.1 Counterstatement of Material Facts in Opposition to Motion for Summary Judgment, dated September 26, 2014.

[4]Citations to "Def.'s Mem." refer to the Memorandum of Law in Support of Liberty Mutual Insurance Company's Motion for Summary Judgment, dated August 15, 2014.

[5]Citations to "Pls.' 56.1 Stmnt" refer to Plaintiffs' Rule 56.1 Statement, dated September 26, 2014.

56.1 Stmnt ¶ 5; Sullivan Aff.[6] ¶ 7).  Plaintiffs retained Schultheis & Panettieri, LLP, Certified Public Accountants, to conduct an audit of Speranza's books and records for the period October 1, 2010 through December 22, 2013 (the "Audit").  (Pls.' 56.1 Stmnt ¶¶ 6-7; Sullivan Aff. ¶¶ 7-8; Kuzma Aff.[7] ¶ 2).  The Audit revealed substantial delinquencies in unpaid contributions and unremitted dues checkoffs for five Speranza projects, including the PS 29 Project.  (Id.) Plaintiffs assert that the auditors determined that Speranza owes $161,855.83 in delinquent contributions for work performed by Local 1 bricklayers on the PS 29 Project.  (Pls.' 56.1 Stmnt ¶ 8; Kuzma Aff. ¶ 3).  According to the Audit, interest owed on this amount as of March 6, 2014, totaled $34,556.21, and liquidated damages totaled $8,092.79, for a total amount owed of $204,504.83.  (Pls.' 56.1 Stmnt ¶¶ 9, 10; Kuzma Aff. ¶¶ 5, 6, Ex. A).

Thomas Dougherty, foreman for Speranza, executed the "Employer Verification" section of the Shop Steward Time Reports ("Shop Steward Reports") submitted by Speranza to plaintiffs.  (Def.'s 56.1 Stmnt ¶ 6, Ex. C at 5-6).  According to defendant Liberty, Speranza submitted Shop Steward Reports for the payroll week ending November 8, 2011 through the week ending January 17, 2012.  (Id. ¶ 8, Ex. C at 7-18).  Speranza is not in possession of any Shop Steward Reports after January 17, 2012.  (Id. ¶ 9, Ex. C at 19).

Speranza was also required to and did submit weekly certified payroll reports to Hunter Roberts and the SCA, certified by James Zelenak, the Chief Financial Officer of Speranza.  (Id.

---

[6]Citations to "Sullivan Aff." refer to the Affidavit of Jeremiah Sullivan in Opposition to Motion for Summary Judgment, dated September 25, 2014.

[7]Citations to "Kuzma Aff." refer to the Affidavit of Viorel Kuzma in Opposition to Motion for Summary Judgment, dated September 25, 2014.

¶¶ 10-11, Ex. C at 2, 24-53, Ex. D at 5). Although certified payroll reports were submitted from the week beginning October 29, 2011 through the week ending May 18, 2012, the Funds were not paid by Speranza on the PS 29 Project for the weeks of March 10, 2012, March 16, 2012, March 24, 2012, April 14, 2012, April 21, 2012, May 5, 2012, and May 19, 2012, so no reports were submitted for those weeks. (Def.'s 56.1 Stmnt ¶¶ 12, 13, Ex. C at 24-53). Instead, Mr. Zelenak submitted Statements of Non-Performance for those weeks. (Id.) However, it is undisputed that the last day of work performed by Local 1 bricklayers on the PS 29 Project was May 17, 2012. (Pls.' 56.1 Stmnt ¶ 15; Kuzma Aff. ¶ 7).

Plaintiffs allege that because they supplied labor and materials in connection with the PS 29 Project, they are intended beneficiaries under the Liberty Bond. (Compl. ¶ 39). On August 8, 2013, Jeremiah Sullivan, the administrator of the Funds, submitted a proof of claim (the "POC") to Liberty seeking payment under the Bond. (Def.'s 56.1 Stmnt ¶ 16, Ex. B at 3-7). In the POC, Sullivan attested to the fact that the first day the Bricklayers provided labor and materials to the PS 29 Project was October 29, 2011 and the last day was May 17, 2012. (Id., Ex. B at 9, Ex. F at 1-2). This is consistent with the Certified Payroll Reports and the Audit. (Id. ¶¶ 19, 21). Indeed, there appears to be no dispute as to the last day Bricklayers provided labor and materials to the PS 29 Project. (Pls.' 56.1 Cntr Stmnt ¶¶ 19, 21).

Liberty moves for summary judgment on the New York claim, arguing that because plaintiffs' claim was brought on September 18, 2013 – more than one year after May 17, 2012, the last day of work for the Bricklayers on the PS 29 Project – the claim under the Bond is untimely under New York Labor Law § 220-g. (Def.'s Mem. at 12-13). In the alternative,

Liberty argues that plaintiffs failed to exhaust their administrative remedies and are precluded from recovery under the Bond. (Id.)

DISCUSSION

## I. Summary Judgment Standards

It is well-settled that a party moving for summary judgment has the burden of establishing that no genuine issue of material fact is in dispute and that the moving party is therefore entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present its case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that "[s]ummary judgment is a drastic remedy and should be applied sparingly"), the Court should not grant summary judgment unless "'it is quite clear what the truth is [and] that no genuine issue remains for trial.'" Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)) (alteration in original), aff'd, 732 F.2d 142 (2d Cir. 1984). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original).

Once the moving party discharges its burden of proof, the party opposing summary judgment has the burden of setting forth "'specific facts showing that there is a genuine issue for trial,' wherein 'a reasonable jury could return a verdict for the non-moving party.'" International Bus. Machs. Corp. v. BGC Partners, Inc., No. 10 CV 128, 2013 WL 1775367, at *4 (S.D.N.Y. Apr. 25, 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (internal quotation marks and citations omitted). Despite the fact that "allegations of the party defending against the summary judgment motion" must be accepted as true, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citations omitted). However, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011), cert. denied, 132 S. Ct. 2439 (2012).


II. The Statutory Scheme

Both parties agree that because the PS 29 Project is a public improvement project with the SCA, the Bond is a bond required and governed by State Finance Law § 137, and the Funds' efforts to collect under the Bond for Speranza's failure to remit unpaid contributions and

7

deductions are covered by Section 220-g. (See Pls.' Mem. at 5, 8; Def.'s Mem. at 8). See also Mercado v. Excel Group, Inc., No. 601812/02, 2004 WL 3263601, at *3 (N.Y. Sup. Ct. July 23, 2004). In moving for summary judgment, Liberty contends that the plaintiffs' suit is untimely because it was not filed within the one-year statute of limitations set forth in Labor Law § 220-g. (Def.'s Mem. at 6-8). In response, plaintiffs argue that the two-year statute of limitations agreed upon by Liberty in the Bond governs this action and therefore, the suit was timely filed. (Pls.' Mem.[8] at 1).


A) State Finance Law § 137

State Finance Law § 137 provides protection to the trade contractors and tradespeople who supply labor and materials to a public works project by mandating payment bonds for all public works projects. N.Y. State Fin. Law § 137; see A.C. Legnetto Constr., Inc. v. Hartford Fire Ins. Co., 92 N.Y.2d 275, 278, 702 N.E.2d 830, 831, 680 N.Y.S.2d 45, 46 (1998). Specifically, Section 137 provides that, in connection with any contract involving construction of a public improvement, each contractor is required to post a "bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or any subcontractors in the prosecution of the work provided for in such contract." N.Y. State Fin. Law § 137(1).

Prior to 1985, municipalities had discretion to decide whether they would require a bond in accordance with State Finance Law § 137. See Dutchess Quarry & Supply Co. v. Firemen's Ins. Co. of Newark, N.J., 190 A.D.2d 36, 38, 596 N.Y.S.2d 898, 899 (3d Dep't 1993). In 1985,

---

[8]Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Opposition to Liberty Mutual's Motion for Summary Judgment, dated September 26, 2014.

the statute was amended to require bonds for municipal public works projects, reflecting the "strong public policy" of providing protection to persons furnishing labor and materials on public works projects "by guaranteeing payment even where there is no fund or insufficient funds due the general contractor or subcontractor against which a labor or materials lien could be filed." Id., 190 A.D.2d at 38, 596 N.Y.S.2d at 899.

Under New York Lien Law § 2, a "public improvement" is defined to include "an improvement of any real property belonging to the state or a public corporation." N.Y. Lien Law § 2(7). Since the SCA is a municipal corporation, and the PS 29 Project qualifies as a "public improvement" to a City school, Section 137 of the State Finance Law provides the relevant terms for payment and material bonds. See Graham Arch. Prods. Corp. v. St. Paul Mercury Ins. Co., 303 F. Supp. 2d 274, 275 (E.D.N.Y.), aff'd, 112 F. App'x 123 (2d Cir. 2004).

Section 137(3) of the State Finance Law provides that a person supplying labor and materials to a contractor who furnishes such a bond "shall have the right to sue on such payment bond . . . for the amount, or the balance thereof, unpaid at the time of commencement of the action." N.Y. State Fin. Law § 137(3). However, the statute contains a notice provision that states that there is no "right of action upon the bond unless [the plaintiff] shall have given written notice to such contractor within one hundred twenty days from the date on which the last of the labor was performed." Id.

Section 137 also contains a one-year statute of limitations provision, which states:

> Except as provided in section two hundred twenty-g [220-g] of the labor law, no action on a payment bond furnished pursuant to this section shall be commenced after the expiration of one year from the date on which the public improvement has been completed and

accepted by the public owner.

N.Y. State Fin. Law § 137(4)(b). Prior to the 2002 incorporation of Section 220-g of the Labor

Law into Section 137, several courts considered whether the one-year statute of limitations

period set forth in Section 137 could be extended by the terms of the bond itself.

The New York Court of Appeals, in <u>A.C. Legnetto Construction, Incorporated v. Hartford

Fire Insurance Company</u>, was asked to determine what the applicable statute of limitations was

for a Section 137 bond when no specific period was stated in the bond. 92 N.Y.2d 275, 275, 702

N.E.2d 830, 830, 680 N.Y.S.2d 45, 45 (1998). The Court found that, because the bond was

required under the State Finance Law, the provisions contained in the State Finance Law

governed, "to the extent they are not superseded by more liberal provisions in the bond." 92

N.Y.2d at 278-79, 702 N.E.2d at 831, 680 N.Y.S.2d at 46. Consistent with this principle, the

Court affirmed the conclusion reached by the Appellate Division, stating that "'in the absence of

a provision in the bond <u>extending the period of limitations</u>, we conclude that the one-year

statutory period applies.'" <u>Id.</u> (citing 244 A.D.2d 859, 860, 665 N.Y.S.2d 782, 783) (emphasis

added).

Other New York courts have relied on <u>A.C. Legnetto</u> and allowed parties to contractually

agree to longer limitations periods. In the subsequent case of <u>Anjac Enterprises, Incorporated v.

C.B.E. Contracting Corporation</u>, the court was confronted with a Section 137 bond that contained

an extended two-year statute of limitations period. Nos. 31629/97, 48032/99, 2001 WL 856124,

at *1 (N.Y. Sup. Ct. Apr. 27, 2001). Relying on <u>A.C. Legnetto</u>, the court in <u>Anjac</u> held that

"contracting parties are free to provide Statute of Limitations periods that exceed the one-year

statutory period contained in the State Finance Law." 2001 WL 856124 at *1. The court concluded that since the bond provided a two year period of limitations, the action was timely commenced within the contractually agreed-upon two-year period. Id. See also Swing Staging Inc. v. Hartford Fire Ins. Co., 269 A.D.2d 193, 194, 703 N.Y.S.2d 99, 100 (1st Dep't 2000) (noting that "[t]his is not to say that the period in which to commence an action cannot be expanded by agreement . . . thus providing even greater protection to the materialman than the statute affords") (internal citation omitted); Shroid Constr., Inc. v. Hartford Fire Ins. Co., No. 20130-06, 2008 WL 1990948, at *1 (N.Y. Sup. Ct. May 6, 2008) (holding that "the provisions of State Finance Law § 137 can be superseded by the provisions of the bond") (citations omitted).

Given the decision of the New York Court of Appeals in A.C. Legnetto and the subsequent holding in Anjac, it is clear that parties entering into a statutorily required bond pursuant to Section 137 of the New York Finance Law are free to modify the terms set out in the statute. Moreover, the court in Dutchess Quarry & Supply Company v. Firemen's Insurance Company of Newark, N.J. made it clear that contractual modifications to a Section 137 bond are permitted so long as they do not diminish or provide less protection to the persons intended to be protected by the statute. 190 A.D.2d 36, 38-39, 596 N.Y.S.2d 898, 900. In Dutchess Quarry, the bond imposed a certified mailing condition precedent to the notice provision that defendant relied upon in seeking to dismiss the claim under the bond. Id. In rejecting the additional notice requirement, the Appellate Division held that "at least as to the furnishing of labor and materials on public projects covered by State Finance Law § 137, we are of the view that a labor and materials payment bond cannot dilute the protection of the statute by imposing notice conditions

11

precedent to payment which are more onerous than that required by State Finance Law § 137(3)."
Id. "[A]ny such more burdensome notice provision having the effect of weakening the financial protection afforded statutory beneficiaries would be void as violative of the public policy embodied in State Finance Law § 137 as amended." Id. (citations omitted).

Thus, it appears that the parties to a Section 137 bond may contractually alter the terms of the bond so long as the alteration does not impose more onerous restrictions that would weaken the financial protection of the parties that Section 137 is designed to protect and thus, the parties may agree to extend Section 137's statute of limitations, but not shorten it.


B) Section 220-g of the Labor Law

Liberty, however, contends that Section 220-g of the Labor Law provides the only avenue for plaintiffs to seek recovery under the Bond for Speranza's failure to remit unpaid contributions and deductions, and that plaintiffs are bound by the statutory terms of Section 220-g. Thus, Liberty contends that prior decisions interpreting Section 137, including the decision of the Court of Appeals in A.C. Legnetto, are inapplicable to this case. (Def.'s Mem. at 8).

Section 220-g, which became effective January 1, 1986, provides additional protection by eliminating the notice requirement of Section 137(3) when employees and collective bargaining units seek to recover unpaid contributions and wage deductions under a labor and materials bond. See N.Y. Lab. Law § 220-g. In 2002, in recognition of the difficulties faced by individual employees who wish to bring suit under a bond such as this, Section 220-g was amended to extend the statute of limitations for those aggrieved workers who filed claims for unpaid wages

12

with the Department of Labor. At the same time in 2002, the legislature amended Section 137 to incorporate a reference to Section 220-g. Thus, Section 220-g relieved these types of claimants from complying with the written notice requirement of Section 137 and permitted the institution of suit on the bond by an employee organization without prior notice. (Id.) Section 220-g now provides that an action brought by affected employees and collective bargaining units to recover under a Section 137 bond "may be brought against the contractor, subcontractor or the issuer of such bond, without prior notice, within one year of the date of the last alleged underpayment, or within one year of the date of the filing of an order by the commissioner or other fiscal officer determining a wage or supplement underpayment." Id. (emphasis added). This amendment was added because the process for investigating and pursuing such claims through the commissioner or fiscal officer often takes more than a year to complete and thus, employees who pursued this route for filing their claims would be foreclosed in the absence of this expansion of the statute of limitations. (Letter from Att. Gen. Office, Bill Jacket, L 2002, ch 242 at 6-7).

While defendant concedes that Section 220-g applies to plaintiffs in this case and eliminates the notice requirement for a specific class of plaintiffs including the Funds, defendant contends that plaintiffs are bound by the other statutory terms of Section 220-g and specifically the requirement that suit on a bond be brought "within one year of the date of the last underpayment, or within one year of the date of the filing of an order by the commissioner or other fiscal officer determining a wage or supplement underpayment." Id. Defendant argues that the statutory language overrides the terms of the Bond and so, regardless of the explicit two-year statute of limitations agreed to by defendant in the Bond, plaintiffs' claim is untimely because

plaintiffs failed to commence this action within one year of the dates identified in Section 220-g. (Def.'s Mem. at 9-10).

Plaintiffs argue that they are bound by the language of the Bond, which contains language that is universally applied in all SCA bond agreements. (Pls.' Mem. at 6). Among other things, the Bond extends the time period for commencing suit from one to two years and provides:

> 3. No suit or action shall be commenced hereunder by any claimant:
>   (b) <u>After the expiration of two (2) years following the date on which Principal ceased work of said Contract</u>, however, if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to [be] the equal to the minimum period of limitation permitted by such law.

(<u>See</u> Def.'s Mem., Ex. D.2 (emphasis added)).

Plaintiffs disagree with Liberty's argument that the terms of Section 220-g are mandatory and override any provision in the Bond itself. (Pls.' Mem. at 7). Instead, plaintiffs rely on the holding in <u>A.C. Legnetto</u> to argue that the provisions of the statute govern only "'to the extent that they are not superseded by more liberal provisions in the bond.'" (<u>Id.</u> at 7 (quoting <u>A.C. Legnetto Constr., Inc. v. Hartford Fire Ins. Co.</u>, 92 N.Y.2d at 278-79, 702 N.E.2d at 831, 680 N.Y.S.2d at 46)). Plaintiffs argue that the law only forbids parties from imposing more onerous terms on claimants than are set out in the statute; the law does not forbid the parties from interposing more generous terms in the language of the bond. (<u>Id.</u>) Thus, the Bond's 120-day notice requirement is invalid since it places more onerous requirements on plaintiffs over and above those provided for in Section 220-g. Therefore, the language of the Bond is superseded by the statute with respect to the special class of claimants, such as plaintiffs, who seek recovery of

unpaid contributions and dues. (Id. at 7-8).[9]  By contrast, plaintiffs contend that because the

limitations period for filing suit provided by the terms of the Bond is more generous than the

statutory period, the Bond provision governs and plaintiffs' claim is timely.


III.  Analysis

Although Liberty argues that the cases decided under Section 137, such as Anjac

Enterprises and A.C. Legnetto, do not apply to cases brought under Section 220-g, defendant

cites no authority in support of that argument. (Def.'s Reply[10] at 3-5).  Indeed, while Liberty

would have the Court completely divorce Section 220-g from Section 137, Section 220-g is more

accurately described as an extension of Section 137 that provides additional protection for a

special class of claimants.  This description is supported by the fact that Section 137 was

amended to specifically incorporate by reference Section 220-g, and also by the parallel purpose

that both statutes further – to provide mechanisms for recovering underpayments on public

improvement projects.  Although Liberty reads Section 220-g as providing the only avenue for

analyzing plaintiffs' claims, and argues that the cases construing Section 137 are inapplicable

---

[9]The Bond contains a notice provision that prohibits suit under the Bond "[u]nless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two (2) of the following: 1) the Principal, 2) the SCA, 3) the Surety above named, within one hundred twenty (120) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made[.]" (See Def.'s Mem., Ex. D.2).  Defendant does not appear to argue that this provision applies to the Funds in light of Section 220-g.

[10]Citations to "Def.'s Reply" refer to the Reply Brief in Further Support of Liberty Mutual Insurance Company's Motion for Summary Judgment, dated October 13, 2014.

when considering a 220-g claim, Liberty's argument ignores the fact that Section 220-g must, to be meaningful, be read in conjunction with Section 137. This is because Section 137 establishes the other requirements that apply to the statutory bond that is mandated in the context of public improvement projects. Without Section 137's other provisions, Section 220-g's one paragraph, which simply eliminates the notice requirement and extends the statute of limitations under certain circumstances, would be incomprehensible.

Given the interconnectedness of these statutory provisions, their legislative history, and the parallel purpose served by both, the Court construes Sections 137 and 220-g in pari materia. Thus, since Anjac Enterprises and A.C. Legnetto held that bonds issued pursuant to Section 137 may provide more liberal provisions than the statute,[11] construing Sections 137 and 220-g in pari materia suggests that the special class of claimants encompassed by Section 220-g would similarly be afforded the opportunity to benefit from more liberal bond provisions.

Liberty cites to Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund v. Rubino, No. 99 CV 3294, 2001 WL 64738 (S.D.N.Y. Jan. 25, 2001), for the general proposition that "a statutory payment bond must be interpreted in accordance with the applicable statutes." (Def.'s Mem. at 11). However, Rubino, like Anjac Enterprises and A.C.

---

[11]Liberty is correct that Anjac Enterprises and A. C. Legnetto were decided before Section 220-g was incorporated by reference into Section 137. (Defs.' Reply at 4-5). However, the Court is not persuaded by Liberty's conclusion that these cases are thus, inapplicable to the instant issue. The legislature's intent when enacting both Section 137 and Section 220-g was to ensure payment on public improvement projects. Section 220-g simply goes one step further than Section 137 by providing additional protections for a special class of claimants. Given that the legislature's intent was the same for both sections, it follows that the Court of Appeals' analysis and reasoning with respect to Section 137 are relevant to the Court's present analysis under Section 220-g.

<u>Legnetto</u>, dealt with a Section 137 bond issued prior to the incorporation of Section 220-g into Section 137.  While Liberty is correct that the <u>Rubino</u> court granted summary judgment in favor of defendant because the bond was silent as to notice and plaintiffs had failed to comply with the notice requirement set forth in Section 137,[12] which the court imputed to the bond, the court explicitly held that a bond can provide a more liberal statute of limitations provisions than the statute.[13]  2001 WL 64738, at *4-5.  In <u>Rubino</u>, the payment bond issued pursuant to Section 137 explicitly provided for a two-year statute of limitations period, which is longer than the one-year period provided in the statute.  <u>Id.</u>  Although the issuer of the surety bond, citing <u>Dutchess Quarry & Supply Company v. Firemen's Insurance Company</u>, argued that "the two-year limit is unenforceable because it subjects claims to additional restrictions that are more onerous than the statute of limitations imposed by N.Y. Finance Law § 137," <u>id.</u> at 5, the <u>Rubino</u> court rejected that reasoning.  The court stated that although "<u>Dutchess Quarry</u> stands for the proposition that a labor and materials bond cannot dilute the protection of the statute," the <u>Dutchess Quarry</u> court

---

[12]Given the incorporation of Section 220-g into Section 137, which eliminated the notice requirement of Section 137(3), there is serious doubt that this portion of the opinion would be good law if decided today.

[13]Liberty also refers to the analyses of Section 137's notice requirement in <u>Cement & Concrete Workers District Council Welfare Fund, Pension Fund, Legal Services Fund & Annuity Fund v. Frascone</u>, 68 F. Supp. 2d 166, 175 (E.D.N.Y. Sept. 24, 1999).  Like <u>Rubino</u>, the bond in <u>Frascone</u> did not contain a notice provision, and the court, finding that the bond must be interpreted in accordance with Section 137, read Section 137's notice requirement into the terms of the bond, and concluded that dismissal was required because no notice had been given.  69 F. Supp. 2d at 175.  While both <u>Frascone</u> and <u>Rubino</u> address the question of what terms apply when a bond is silent with respect to a statutory requirement, they do not address the issue of what terms apply when the provision in the bond extends the time beyond that provided for in the governing statute.  Therefore, these holdings cannot be analogized to the instant case where the statute of limitations provision in the Bond is longer than that set out in the statute.

"found that the 'statutory notice provision is secondary and subordinate to the primary statutory objective of protecting persons furnishing labor and materials on Federal public works projects' and ruled that weakening the financial protection afforded to statutory beneficiaries would violate the public policy embodied in N.Y. Finance Law § 137." Id. at 6 (quoting Dutchess Quarry & Supply Co. v. Firemen's Ins. Co., 190 A.D.2d at 39, 596 N.Y.S. 2d at 900). In holding that the two-year statute of limitations period in the bond governed, the court in Rubino made it clear that the protection offered by the statute and the limitations imposed upon contractual modifications to the bond were designed to safeguard the people providing labor and materials on public improvement projects, and not the surety. Id. Accepting defendant's logic "would make a mockery of the public policy of the state of New York and concomitant with that policy, the legislature's intent to afford protection to laborers." Id.

While the Rubino court was referring to the legislative intent of Section 137, the legislative history of Section 220-g demonstrates that the intent to protect people providing labor and materials on public improvement projects applies equally, if not more vigorously, to claimants under Section 220-g. Section 220-g was originally enacted in 1985 in order to "provide a mechanism to enforce the New York State Prevailing Wage Law," and with the hope that the law's passage would "lead to more compliance with the law and that workers will receive the proper wages and supplements they are due." (Memorandum, Bill Jacket, L 1985, ch 137 at 7). As discussed supra, in 2002, the legislature expanded the class of claimants who could benefit from the protection provided by Section 220-g, permitting suit to be brought not only within one year of the last alleged underpayment, but also within one year "of the date of the

18

filing of an order by the commissioner or other fiscal officer determining a wage or supplement underpayment." N.Y. Lab. Law § 220-g.

In light of the foregoing, it is clear that the legislature passed and amended Section 220-g in order to provide additional protection and broader avenues of recovery for underpayments to public improvement project employees and their collective bargaining units. Indeed, Liberty agrees that the legislature intended to provide additional protection for this special class of claimants, stating, "[w]hile State Finance Law § 137 sets forth the relevant terms for payment and material bonds required on the public-improvement project, the New York legislature decided that a certain class of claimants was in need of additional protection. Thus, the legislature codified a remedy available only to employees and collective bargaining units under the Labor Law." (Def.'s Mem. at 6) (emphasis in original).

Construing Section 220-g in light of the legislative intent to protect and expand the avenues of recourse available to employees hired to provide labor and materials on public improvement projects, the Court has found no authority that would limit the parties' right to enter into contractual provisions that provide more protection to this class of employees. If the Court were to adopt Liberty's argument, claimants bringing suit under the provisions of Section 137 could contractually agree to extend the limitations period beyond one year, see A.C. Legnetto and Anjac Enterprises, but claimants bringing suit under Section 220-g – the group the legislature enacted additional legislation to protect – would be prohibited from doing the same. Such a conclusion "'would make a mockery of the public policy of the state of New York.'" Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund v. Rubino,

2001 WL 64738, at *6.

Although only a few courts have addressed the question of whether the parties can contractually extend the statute of limitations under Labor Law § 220-g, this issue was squarely addressed in <u>Melissakis v. Proto Construction & Development Corporation</u>, No. 17582/00, 2001 WL 35980651, at *2 (N.Y. Sup. Ct. Mar. 29, 2001), <u>aff'd as modified on other grounds</u>, 294 A.D.2d 342, 741 N.Y.S.2d 731 (2d Dep't 2002). The court in <u>Melissakis</u> held that "plaintiffs' claims pursuant to Labor Law § 220-g are timely based upon the <u>two year</u> statute of limitations provided in the bond which is required under section one hundred thirty-seven of the State Finance Law," even though they fell outside of Section 220-g's one-year statute of limitations period. <u>Id.</u> (emphasis added). Thus, when considering whether a claim under Section 220-g was timely filed, the court applied the two-year limitations period provided in the bond and not the one-year period provided in Section 220-g. In other words, the court concluded that the bond's provision trumped the period set out in Section 220-g.

Liberty argues that the court in <u>Majstrovic v. R. Maric Piping, Incorporated</u> held that where a bond provided for a longer statute of limitations period than Section 220-g, the one year period provided by Section 220-g controlled. 171 Misc. 2d 429, 435, 655 N.Y.S.2d 285, 288-89 (N.Y. Sup. Ct. 1997). However, Liberty misconstrues the holding of <u>Majstrovic</u>. In <u>Majstrovic</u>, the court considered whether plaintiffs' claims to recover prevailing wages and benefits pursuant to Section 220-g were timely. The <u>Majstrovic</u> court stated the following:

> Specifically, Labor Law § 220-g permits an affected employee to bring an action to recover his or her unpaid wages from the payment bond that must be filed pursuant to the State finance

> law.  The employee or his or her union must file such an action
> within one year of the date of the last alleged underpayment.
> (Labor Law § 220-g).
>
> The payment bonds in the present case provide for a two-year
> period in which to file a lawsuit. . . .
>
> <u>Even providing the plaintiffs the benefit of the longer limitation
> period contained in the bond, their action is untimely</u>.

<u>Id.</u> (emphasis added).  Based on this language, Liberty argues that the <u>Majstrovic</u> court held that

the statutory language in Section 220-g providing for a one year statute of limitations period

"trumped the language of the bond," which provided for a two year claims period.  (Def.'s Mem.

at 10-11).  However, the <u>Majstrovic</u> court did not decide that issue, but rather assumed <u>arguendo</u>

that the longer period applied and concluded that the suit was untimely under both the claims

period provided in the statute <u>and</u> under the two-year claims period provided in the bond because

the action was commenced more than two years after the last date that services were rendered.

Thus, <u>Majstrovic</u> sheds little light on the instant case where plaintiffs' suit is timely if the statute

of limitations in the Bond controls.

Here, the Bond, which was negotiated by the surety, provides for a two-year limitations

period.  Since this period is longer than the applicable one-year period set out in Section 220-g

and permits claimants bringing suit pursuant to Section 220-g a longer period of time to file, it

provides a benefit to claimants more generous than the statute and, consistent with the legislative

intent, provides additional protection for unions and workers, the class of claimants for which

Section 220-g was enacted to protect.  Thus, the Court finds that the legislative history and intent

suggest that where the bond provides for a more generous statute of limitations period than

Section 220-g, the applicable statute of limitations period should be dictated by the bond.

Additionally, although the case law addressing whether a bond can extend the limitations period for actions brought pursuant to Section 220-g is limited, it suggests that such extensions are permissible.

Given the legislative history and intent behind Section 220-g, and the court's reasoning in <u>Melissakis</u>, the Court concludes that the two-year period provided in the Bond controls and thus, the suit in this case was timely filed.

## IV. <u>Contract Term</u>

Liberty also argues that, as a matter of contract law, the suit in this action is untimely. Liberty points to a provision in the Bond which states that "if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to [be] . . . equal to the minimum period of limitation permitted by such law." Based on this provision, Liberty argues that the Bond's two-year provision is prohibited by the limitations period set forth in Section 220-g and, thus, must be amended to the one-year period provided in Section 220-g. (Def.'s Mem. at 12).

Again, Liberty cites no authority that supports its position that the Bond's two-year statute of limitations period is "prohibited" by law.[14] While the Bond provides for a more

---

[14]There appears to be no dispute that at the time the Bond was entered into, Section 220-g provided for a one-year claims period. Liberty has failed to explain why it agreed to a Bond containing a two-year claims period if a two-year claims period was actually "prohibited" by law. Moreover, since the bond at issue in this case is a standard bond used by the SCA, by asking this Court to refer only to a one-year limitations period, Liberty is seeking to have the Court rewrite an entire series of bonds entered into with the SCA that contain this two-year provision and to make this modification without input or consent from the SCA.

generous limitations period than Section 220-g,[15] nothing in Section 220-g expressly prohibits parties from providing for a longer limitations period. Indeed, the holdings in <u>Anjac Enterprises</u>, <u>A.C. Legnetto</u>, <u>Shroid Construction</u>, and <u>Melissakis</u> confirm that so long as the provisions in the Bond do not diminish the rights of the workers or make it more onerous to pursue their claims, the parties may contractually agree to alter the terms of the Bond.[16]

---

[15]Liberty argues that the Bond contains "constricting" language and faults plaintiffs for only relying on cases that contain more liberal provisions than Sections 137 and 220-g. (Def.'s Reply at 5). It is unclear what "constricting" language Liberty is referring to given that here, like the cases cited by plaintiffs, the Bond contains a more liberal provision than the statute in that it extends the claims period to two years. Liberty cites to <u>Techcon Contracting, Inc. v. Incorporated Village of Lynbrook</u>, No. 1-1557/2003, 2007 WL 702801 (Sup. Ct. Feb. 23, 2007), in support of its argument that plaintiffs ignored cases where a bond contained "constricting" language. (Def.'s Reply at 5). However, while the bond in <u>Techcon</u> required that an action be commenced within one year after the principal ceased work on the project, 2007 WL 702801 at *3, it is unclear whether in fact this was "constricting" language. The court in <u>Techcon</u> made it clear that there was insufficient evidence to determine when final payment to the subcontractor was due under the bond such that the one-year statute of limitations set out in Section 137 would be triggered. <u>Id.</u> at *2. Although the court in <u>Techcon</u> analyzed the provision as if it provided a shorter limitations period, and upheld the provision as not "unreasonable," if, in fact, the final payment to the subcontract was due before the principal ceased work, then the bond's provision would actually have been more liberal than Section 137. <u>Id.</u> In any event, the decision in <u>Techcon</u> is not controlling in this case where the provision is clearly more liberal than the statutory limitations period.

[16]Although Liberty argues that, as a matter of public policy, parties cannot extend statute of limitations periods (Def.'s Mem. at 15-17 (citing N.Y. C.P.L.R. § 201; <u>John J. Kassner & Co., Inc. v. City of New York</u>, 46 N.Y.2d 544, 550, 389 N.E.2d 99, 103, 415 N.Y.S. 2d 785, 789 (N.Y. 1979))), the New York Court of Appeals in <u>A.C. Legnetto</u> as well as the courts in <u>Anjac</u>, <u>Shroid Construction</u>, and <u>Melissakis</u> confirm that parties are permitted to expand the limitations periods in payment bonds under Sections 137 and 220-g. Indeed, this Court has not found a single case decided after <u>A.C. Legnetto</u> holding that a bond issued pursuant to either Section 137 or 220-g cannot provide for a more liberal statute of limitations period. In <u>Scaccia Concrete Corporation v. Hartford Fire Insurance Company</u>, a case decided before <u>A.C. Legnetto</u> but after Section 137 was amended to <u>require</u> bonds on municipal public works projects, the court considered whether a bond could extend Section 137's one-year limitations period. 212 A.D.2d 225, 226, 628 N.Y.S.2d 746, 747 (2d Dep't 1995). The court noted that, prior to the amendments, bonds for municipal projects that did not conform with Section 137's requirements were

Liberty advances a "take it or leave it" argument, asserting that if plaintiffs benefit from

the no-notice provision in Section 220-g, then plaintiffs are bound by the rest of Section 220-g's

provisions. (Def.'s Mem. at 13). Indeed, both parties concede that the Bond's notice provision

yields to Section 220-g's no-notice provision since, in this case, the statute is more protective of

claimants' rights than the Bond. (Def.'s Mem. at 9-10; Pls.' Mem. at 5). Liberty contends that if

no notice is given, then under Section 220-g, suit must be filed within one year. Liberty cites no

authority in the statute or the case law which supports this conclusion. Rather, the case law

suggests that while parties to a bond may not include terms that are more onerous to the class

intended to be protected by the statute, they may agree to more generous terms. See Nevillus

Tile, Inc. v. Bovis Lend Lease LMB, Inc., 98 A.D.3d 953, 954-55, 951 N.Y.S. 2d 67, 69 (2d

Dep't 2012) (stating that "'a labor and materials payment bond cannot dilute the protection of the

statute by imposing notice conditions precedent to payment which are more onerous than that

required by State Finance Law § 137(3). [A]ny such more burdensome notice provision having

---

considered ordinary "common law bonds," and could therefore extend the statute of limitations
period. Id., 212 A.D.2d at 228-31, 628 N.Y.S.2d at 748-50. However, bonds that specifically
referenced Section 137 were deemed "statutory bonds" and were thus, governed exclusively by
Section 137's one-year statute of limitations. Id. The court held that, even after the amendments
and in light of the public policy of protecting people providing labor and materials on public
works projects, bonds with terms more generous to claimants than those in the statute, including
the bond at issue in the case, could still be construed as common law bonds and that the longer
limitations period could stand. Id., 212 A.D.2d at 233-35, 628 N.Y.S.2d at 751-52. Although the
court in A.C. Legnetto eschewed the distinction between common law bonds and statutory
bonds, concluding that "[s]ince [the] bond was required under the State Finance Law, it must be
deemed ipso facto to have been 'furnished pursuant to' the statute," the court, as in Scaccia,
explicitly noted that more liberal provisions in a bond that were favorable to claimants would be
permitted to supersede Section 137's provisions. 92 N.Y.2d at 278-79, 702 N.E.2d at 831, 680
N.Y.S.2d at 46.

the effect of weakening the financial protection afforded statutory beneficiaries would be void as violative of the public policy embodied in State Finance Law § 137 as amended'") (citation omitted); see also A.C. Legnetto Constr., Inc. v. Hartford Fire Ins. Co., 92 N.Y.2d at 278-79, 702 N.E.2d at 831, 680 N.Y.S.2d at 46; Anjac Enterprises, Inc. v. C.B.E. Contracting Corp., 2001 WL 856124 at *1; Melissakis v. Proto Constr. & Dev. Corp., 2001 WL 3598065 at *2. Thus, while Section 220-g would preclude enforcement of the Bond's notice requirement, the statute does not prohibit the Bond's two-year limitation period.

Given the lack of an express prohibition against extending the statute of limitations period in Section 220-g, and the decisions in the relevant case law which uphold longer limitations provisions agreed upon by the parties to bonds mandated by State Finance Law § 137 and New York Labor Law § 220-g, the Court concludes that the two-year limitations period provided in the Bond governs, and plaintiffs' suit was timely filed.[17]

---

[17]In addition to arguing that plaintiffs failed to file suit within one year of the last alleged underpayment, Liberty also points to the option in Section 220-g that permits claimants to seek recovery within one year of the date of an order by the commissioner or fiscal officer determining an underpayment, and argues that plaintiffs' claims are not timely under this provision because "the record is devoid of *any* reference to the administrative steps taken by the Bricklayers." (Def.'s Mem. at 14-15). Liberty argues that since plaintiffs failed to exhaust their administrative remedies by filing a claim with the appropriate fiscal officer, plaintiffs are precluded from recovery. (Id.) However, given that the Court concludes that the Bond's two-year statute of limitations period applies, the Court finds that plaintiffs have timely filed this action by commencing an action against the issuer of the Bond within the two year limitations period provided in the Bond. There is no requirement in the Bond or the statute that plaintiffs must file a claim with the commissioner or fiscal officer; this provision of § 220-g just provides an alternative means of recovery which is not at issue in this case and the Court need not address this argument.

<u>CONCLUSION</u>

For the reasons stated above, Liberty's motion for summary judgment is denied.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
    March 31, 2015

/s/ CHERYL L. POLLAK          3/31/2015

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York